UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LM                                                              Civil Action No. 15-02524

versus                                                          Unassigned District Judge

Neustrom, et al                                        Magistrate Judge Carol B. Whitehurst

**REPORT AND RECOMMENDATION**

Currently pending before the undersigned, on referral by the district judge, is a Motion to Dismiss Fourth Amended Complaint for Damages Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant, Lafayette City-Parish Consolidated Government ("LCG") [Rec. Doc. 119], Plaintiff, Leon Moye's, Memorandum in Opposition [Rec. Doc. 123], and LCG's Reply [Rec. Doc. 126]. For the reasons explained below, it is recommended that the Motion to Dismiss be denied.

*I. Background*

Plaintiff alleges in the "Factual Allegations" of his Fourth Amended Complaint ("Complaint") that he was booked into the Lafayette Parish Correctional Center ("LPCC") on March 10, 2015, at approximately 8:35 p.m. for "non-violent drug-related crimes." *R. 116, ¶ 5.* At that time, he alleges he identified himself as a confidential narcotics informant and "begged deputies to house him separately from other prisoners who would recognize him as an informant and seek retaliation." *Id.* Plaintiff further alleges that the booking deputies discussed how to book a

confidential informant while other new inmates were being booked, confirming Plaintiff's identity as a confidential informant. *Id at ¶ 7*. Without the required screening and classification as an at-risk informant to separate him from violent or dangerous prisoners, Plaintiff alleges he was assigned to the IC pod on March 10, 2015. *Id at ¶¶ 9, 10*.

The next day, March 11, 2015, Plaintiff alleges he was brutally raped by two men in the shower who referred to him as a "rat." *Id at ¶¶ 11, 12*. Because there was no deputy in the holding area, nor any deputy who made rounds, Plaintiff had to wait until meal time to report the incident and ask for help. *Id at ¶ 12*. After receiving medical treatment, Plaintiff was returned to the jail and ultimately transferred to solitary confinement. *Id at ¶¶ 14, 15*.

In a later incident on May 1, 2015, Plaintiff alleges he was dragged through the main control hub and beaten by officers in a secluded hallway, where no prisoners were housed and there were no cameras in the area. *Id at ¶¶ 29-32*. Plaintiff contends he received serious injuries as a result of the attack. *Id at ¶¶ 33, 34*.

Plaintiff filed this action pursuant to 28 U.S.C. § 1983 against Michael W. Neustrom, individually and in his official capacity as Sheriff of Lafayette Parish[1]; Rob Reardon, individually and in his official capacity as Lafayette Parish Sheriff's

---

[1] As Sheriff Neustrom retired July 1, 2016, Sheriff Mark Garber was substituted as the proper party regarding any official capacity claims. *R. 17*.

2

Office ("LPSO") Director of Corrections; and LPSO Deputy Sheriffs, James Michael Auzenne and Thomas Martin, individually and in their official capacities. On December 18, 2017, Plaintiff filed a Third Amended Complaint adding LPSO Deputy Becky Senegal, Ace American Insurance Co., and LCG as defendants. *R. 91*. On March 29, 2018, pursuant to the Court's order, *R. 112*, Plaintiff filed a Fourth Amended Complaint setting forth his claims against Neustrom, Garber, Reardon, Auzenne, Martin, Senegal, Ace American and LCG, specifically titling the allegations, eliminating lengthy historical information and reducing his pleadings to 35 pages.[2] Also, as ordered by the Court, Plaintiff set forth his allegations against the defendants "concisely" and "directly" as they applied to the alleged incident. *R. 112*. Thereafter, LCG filed the instant Motion to Dismiss.

## II. Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan*

---

[2] Plaintiff's Original, First Amended, Second Amended, and Third Amended Complaints all "amended and supplemented" the prior complaints, eventually totaling at least 127 pages. *R. 1, 23, 90, 91*. Plaintiff's Fourth Amended Complaint "replaces all other Complaints and Amended and Supplemental Complaints." *R. 112*.

*Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations and unwarranted deductions of fact are not accepted as true and courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, at 555. "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id., see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Iqbal*, at 678.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a

4

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).*III. Legal Analysis*

In its motion to dismiss, LCG seeks dismissal of all of Plaintiff's claims against it. *R. 119-1.* In that regard, LCG contends that Plaintiff states all defendants are liable "jointly and *in solido*," therefore LCG must respond to each count in the Complaint "despite the fact that Plaintiff's only claim against LCG seems to be for *Monell* liability." *Id.* In his response to the motion, Plaintiff clarifies LCG's interpretation of the Complaint and states that in addition to his *Monell* claim, he is also seeking "to recover damages against LCG for its liability under State law for breaching its duty to provide for a good and sufficient jail." *R. 123.* Based on the Court's review of the Fourth Amended Complaint, the Court agrees that Plaintiff has alleged a *Monell* claim under 42 U.S.C. § 1983 and a State law claim for breach of duty related to proper maintenance of the LPCC physical plant.[3] Hence, LCG's motion to dismiss applies only to its argument that Plaintiff failed to state a *Monell*

---

3  The Court's recommendation reflects these limited claims Plaintiff pursues against LCG.

claim against LCG. *R. 123, Section C.*

LCG contends that the Court should rely on the holding in *Means v. Durel*, 2016 WL 447720 (W.D.La., 2016). The allegations in *Means*, however, are distinguishable from those in this case. In *Means*, the court found that the complaint was "devoid of any allegations whatsoever that the LPCC was underfunded in any way, and more specifically, no allegations that there was any lack of funding for jail maintenance." *Id.*, 2016 WL 447720, at *9. The court further stated, "[t]here are likewise absolutely no allegations that any official municipal policy, custom or procedure of inadequate funding or under-funding of the LPCC was the cause, moving or operational force behind any potentially viable constitutional claim, that is, there are no allegations in the complaint that Means' slip and fall was caused by a lack of funding." *Id.* Based on the lack of allegations, the court held that Means failed to "raise a right to relief above the speculative level. ... and has failed to allege facts sufficient to nudge[ ] [his] claims across the line from conceivable to plausible ...." *Id*. As discussed below, the Court finds that the Fourth Amended Complaint in this case is just the opposite of *Means*, and Plaintiff alleges facts sufficient to nudge his claims across the line from conceivable to plausible as required by *Twombly*.

In his Factual Allegations, Plaintiff alleges LCG had a pattern, practice and custom of operating an overcrowded jail which resulted in a lack of housing space for placement of prisoners in the appropriate settings. He alleges this often resulted

6

in the IC pod being used as a "holding area" for male prisoners pending classification, such as in his case. *Id at ¶¶ 22-24.* Plaintiff further alleges that the IC Pod's "open dormitory style unit" failed to provide for his safety and security and "was [a] direct contributing factor" in his rape and resulting injuries. *Id at ¶¶ 25, 26, 27.* In particular, Plaintiff alleges that rather than enter the IC Pod and shower, the jail staff making occasional rounds "often peers though a small window on the entrance door, measuring approximately six inches wide by eighteen inches tall… [which] is obstructed by columns, bunks, prisoners and other furnishings…." *Id at ¶ 27.*

In Section A, "History of Widespread Abuse, Violence, Failure to Protect Prisoners from Injury or Violence and Conditions Posing Substantial Risk of Harm to L.M., and Other Prisoners at the Lafayette Parish Correctional Center in Support of Monell Claims,"[4] Plaintiff alleges that the "critical problems of safety, security and violence" in the LPCC resulted from prisoner over population and understaffing of jail personnel. *Id at ¶¶ 40-42.*

Section B, "History of Understaffing, Overcrowding, Overpopulation and/or Prisoner Population in Excess of the Functional Capacity of the Lafayette Parish Correctional Center Creates an Environment Where Violence Flourishes and the

---

[4] Plaintiff complied with the Court's order to "title" and "concisely" identify the claims alleged in his Complaint. The Court will quote the title of each section because it identifies the subject of the claim and is an allegation itself.

Risk of Prisoner-on-Prisoner Violence Increases in Support of Monell Claims," alleges that the prisoner over population and personnel understaffing primarily resulted from LCG's failure to properly maintain and upgrade the physical plant. *Id at ¶¶ 56-59.*

In particular, Plaintiff alleges that the LPCC was constructed in a "podular indirect supervision" style which divided inmate housing areas into "manageable sized" units. The units surrounded a central common area and control booth in which personnel observed inmate activity. *Id at ¶ 46.* Plaintiff alleges that in January 2015, the jail's security staff positions "had been dangerously reduced" and over 30% of the "security shift deputy staff" positions were vacant while "the number of prisoners housed in the LPCC continued to increase." *Id at ¶¶ 47-49.*

Plaintiff further alleges that "[i]n 2009 A.C.A. auditors touring the LPCC specifically noted: "This is a linear facility and as such the housing units are showing it due to staff not getting into the housing units enough;" and, "The significant incident summary was notable in two areas which correspond to the physical plant and linear design which are assaults on offenders by other offenders which totaled 276 for a year and the number of forced moves which totaled 179." *Id at ¶53.* Plaintiff alleges that the A.C.A. auditors found non-compliance in that the square feet of unencumbered space for each occupant/inmate was a total of 42 square feet total with 2 inmates per cell (21 square feet each), while the A.C.A. standards

8

required "at lease 35 square feet of unencumbered space for each occupant." *Id at ¶54.* Plaintiff alleges the increases in the overall jail population have created the type of situation in which he was attacked. *Id at ¶55.*

In Section C, "History of the Jail's Physical Structure is Inadequate, Which Makes It More Difficult for Staff to Safely Monitor Prisoners and Increasing the Risk of Prisoner Violence in Support of *Monell* Claims against LCG and Sheriff," Plaintiff specifically alleges that prior to March 9, 2015, the LCG failed to properly fund the LPCC, and that the lack of funding prevented the physical plant from being transitioned to a direct supervision unit style of offender management, deemed by the Sheriff to be the best for supervision of offenders. *Id at ¶56.*

Specifically, Plaintiff alleges that such a lack of funding was a breach of LCG's duty "to provide for a good and sufficient jail and to provide for the maintenance of the physical plant of the LPCC," *Id at ¶56*; and that, "the LCG was deliberately indifferent to the hazards caused by operating the LPCC in a manner in which it was not designed to be operated and without adequate staff and failed to take reasonable actions to prevent unreasonable risk of prisoners and staff being assaulted," *Id at ¶59.*

Based on the foregoing, the Court finds that Plaintiff has stated a plausible claim against LCG for violation of his constitutional rights under *Monell* as well as a State law claim for breach of duty related to LCG's failure to maintain the LPCC

9

physical plant. Plaintiff's allegations against LCG contain enough facts (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of his claims. *See, Lormand*, 565 F.3d at 257.

*IV. Conclusion*

Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss Fourth Amended Complaint for Damages Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant, Lafayette City-Parish Consolidated Government ("LCG") [Rec. Doc. 119] be **DENIED** and Plaintiff may proceed with his *Monell* claim under 42 U.S.C. § 1983 and his State law claim for breach of duty against the LCG related to its maintenance of the LPCC.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 5th day of June, 2018.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE